**UNITED STATES of America,**
**Appellant,**

v.

**Colonel Frank CHILDS and Elizabeth**
**Childs, Appellees.**

**No. 22601.**

United States Court of Appeals,
Ninth Circuit.

June 24, 1970.

Frank B. Friedman (argued), Edmund B. Clark, Attys., Clyde O. Martz, Asst. Atty. Gen., Lands Div., Dept. of Justice, Washington, D. C., Jo Ann D. Diamos, Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., Raymond N. Zagone (argued on rehearing), Shiro Kashiwa, Asst. Atty. Gen., Lands Div., Dept. of Justice, Washington, D. C., Richard K. Burke, U. S. Atty., for appellant.

Dale Haralson (argued), Bob Barber, of Barber & Haralson, Cusick, Watkins & Stewart, Tucson, Ariz., for appellees.

Before BROWNING and CARTER, Circuit Judges, and GRAY,* District Judge.

## OPINION UPON REHEARING

GRAY, District Judge:

This is an action, brought by the United States Government, to quiet title to a 640-acre ranch (the ranch) in Arizona. The Government contends that it holds title to the ranch as trustee pursuant to a trust created in 1947 by Thomas Childs, Jr. (Mr. Childs) and his wife, both now deceased, for the benefit of their children and of the Papago Indian Tribe, of which Mrs. Childs was a full-blooded member. The twelve children of Mr. and Mrs. Childs successfully contended in the trial court that the plaintiff has no present interest in the land because the trust was invalid or, if originally valid, it was later revoked or otherwise failed.

In an opinion and decision issued on February 9, 1970, we (Judge Carter dissenting) reversed the trial court because we were unable to accept any of the asserted reasons for declaring the trust unenforceable. However, on rehearing, certain facts were called to our attention of which we were previously unaware, and which we believe to sustain the judgment of the trial court. We accordingly withdraw our opinion and decision of February 9, 1970, and we now affirm the judgment below.

We begin this opinion by summarizing the facts that we believe the record shows to be undisputed. Thomas Childs, Jr. was born of Caucasian parents in about 1870 on land in Arizona that his father had begun to develop approximately two years earlier. In due course, Mr. Childs' father relinquished to him the former's homestead rights on the two 320-acre parcels that now constitute the ranch that is the subject of this litigation. Mr. Childs later obtained patents covering the ranch.

Mr. Childs devoted substantially all of his life to improving the ranch. It was his only home; all of his children were born there; and he was able to obtain from the United States Government an allotment of more than 300,000 acres of Taylor grazing land that he operated in conjunction with the ranch. By 1945, Mr. Childs had made of the ranch a valuable property and was justifiably proud of his accomplishment.

By 1946, Mr. Childs had begun to be troubled about matters of estate planning. He loved his twelve children; he loved the ranch and wanted it to be preserved for their benefit; but he lacked confidence in the ability of any of his children to operate the ranch. He also loved and trusted the Papagos and, for at least a while, talked of turning the ranch over to the Papago Tribal Council to operate for his children.

In about 1946, Mr. Childs consulted with an attorney and expressed to him his desire to convey the ranch to someone who would operate it indefinitely for his descendants. The attorney responded that this could not be done for a period of time longer than that allowed by the rule against perpetuities, i. e., lives in being plus twenty-one years.

Mr. Childs was not satisfied with the advice that he had received from his attorney, and some time later he met with a Mr. Lusher, a representative of the United States Bureau of Indian Affairs in whom he had confidence. He expressed to Mr. Lusher his concerns and his desires with respect to his children and the ranch. Mr. Lusher responded that he would like to be helpful, and he thereafter obtained permission from his superiors in the Bureau of Indian Affairs to try to assist Mr. Childs in finding a solution for his problem. On about January 22, 1947, Mr. Lusher returned to the ranch, along with his immediate

---

* Honorable William P. Gray, United States District Judge, Central District of California, sitting by designation.

supervisor in the Bureau of Indian Affairs, Joe A. Wagner, and had a further discussion with Mr. Childs. According to the testimony of Lusher and Wagner, Mr. Childs said in this conversation that he wanted his children to have full rights to the use of the ranch as long as they lived; that it should otherwise be preserved permanently for the Papagos; and that his grandchildren and later descendants could benefit from the lands as members of the Papago Tribe.

As a result of their meeting with Mr. Childs, Lusher and Wagner consulted with a Mr. Sanford, the attorney for the Bureau of Indian Affairs in Phoenix. Mr. Sanford was understandably familiar with 25 U.S.C. § 464, 48 Stat. 985 (June 18, 1934), pursuant to which a person may sell or give interests in land to the United States in trust for an Indian tribe or individual Indian. By completing a Department of the Interior form entitled "Offer to Sell Lands to the United States", he prepared a document that would constitute an offer by Mr. and Mrs. Childs to convey the ranch to the United States " * * * for Indian purposes under the provisions of the Act of June 16, 1934 (48 Stat. 984) as a donation." The proposed offer contained six specially prepared conditions, the most pertinent to the present issues being the following:

"3. This offer is made subject to the condition that the offerer [sic] shall reserve a life interest in the property described herein.

"4. The acceptance of this offer is contingent upon the enrollment of the grantors' children as members of the Papago Tribe.

"5. As part of the consideration of this conveyance it is understood and agreed that the children of the grantors shall be granted a preferential right of assignment of the use of the buildings and existing improvements located on the lands described herein."

On February 10, 1947, Messrs. Lusher, Wagner and Sanford met with Mr. and Mrs. Childs at the ranch. Mr. Sanford discussed the proposed offer with Mr. Childs in the presence of Mrs. Childs, and they thereupon executed it, the latter by affixing her thumb print because of her inability to write.

On April 4, 1947, the Papago Tribal Council, by a unanimously adopted resolution, accepted all of the conditions of the offer, and on May 1, 1947, the acceptance of the offer by the Department of the Interior was officially noted in the place provided therefor at the foot of the offer form.

On May 6, 1947, Mr. Wagner returned to the ranch and presented to Mr. and Mrs. Childs for signature a warranty deed by which they conveyed the ranch to the United States "in trust for the Papago Tribe, Arizona and its assigns forever", subject to a life estate in the grantors.

Mrs. Childs died in 1950. Mr. Childs died in 1951, and his will, executed on January 20, 1951, was duly probated.

As is indicated at the outset of this opinion, the Government brought this quiet title action on the basis of the validity of the conveyance of the ranch in trust, and the trial court agreed with the children of Mr. and Mrs. Childs that the trust may not be upheld.

Contrary to the contention of the defendants, the trial court specifically found that there was no fraud or intentional misrepresentation on the part of the Government. He ruled, however, that the representatives of the Bureau of Indian Affairs stood in a fiduciary relationship with Mr. and Mrs. Childs; that they should not have permitted Mr. and Mrs. Childs to sign the trust instrument without first obtaining legal advice; and that because of these circumstances " * * * the Government exercised what amounts to undue influence over the Childs sufficient to cancel the attempted trust."

In seeking to evaluate the trial court's conclusion in this respect, it is essential to understand that, under the constitution of the Papago Tribe, the children of members of the tribe may be adopted by

the Papago Council only if such children are "one-half or more Indian blood." (Article II, Section 1(b)). (This is the fact of which we were unaware at the time our decision of February 9, 1970, was announced.) Inasmuch as Mr. Childs was a Caucasian, his own children were one-half Indian, and at least some of them were married to Caucasians. Thus the sons and daughters of these children have less than one-half Indian blood and cannot be adopted by the tribe and thereby become beneficiaries of the trust. There is no indication in the record that Mr. and Mrs. Childs were aware, at the time they executed the trust instruments, that they were permanently depriving a substantial number of their grandchildren of any beneficial interest in the ranch.

The record shows quite clearly that Mr. and Mrs. Childs had wanted to keep the ranch intact and had also wanted the beneficial use, without the responsibilities of management, to remain permanently in their children and later descendants. It is true that they could not fully accomplish all of these desires, and that the establishment and operation of the trust would solve the problem to a considerable extent. However, it is by no means certain that the settlors would intentionally have adopted such solution at the cost of disinheriting several of their grandchildren.

The representatives of the Bureau of Indian Affairs appear to have acted in good faith and to have done their disinterested best in commending the trust to Mr. and Mrs. Childs. However, these representatives also had a duty to look out for the interests of the members of the Papago Tribe, and the trust that was created very substantially furthered those interests. Under all of these circumstances, we believe that the trial court was justified in holding that the execution of the trust constituted an unnatural disposition of the ranch which favored the Papago Tribe, and that in the absence of independent legal advice at the time of its execution, the trust must be set aside.

Inasmuch as the foregoing is sufficient basis for affirming the decision below, it is unnecessary to consider the other reasons asserted by the trial court in holding the trust unenforceable.

The decision of the trial court is affirmed.